Chambers v. Sessions. May it please the Court, I'm Brian Sutherland for Petitioner Kayon Damian Chambers. The BIA erred as a matter of law in determining that Petitioner was not bisexual on the ground that he did not present evidence of past same-sex conduct from past same-sex partners. In doing so, the agency failed to distinguish between orientation and conduct, totally overlooked the fact that the same-sex evidence it demanded was unavailable, and as a matter of due process, denied his application for deferral of removal without giving him fair notice that the application would be denied if he did not present the evidence that was demanded. The BIA's order and the IJ's decision both demonstrate that what we're addressing here is a question of law. They set out criteria that they wanted Mr. Chambers to meet in order to establish that he was bisexual. We see that in the BIA's order where it says he did not present evidence of same-sex relationships, which is different from sexual orientation. Is that what happened here, or is this essentially an adverse credibility determination? I mean, the IJ says the court has examined the testimony of the respondent and that of his three witnesses and finds that the credibility of the witnesses is doubtful in this court's assessment. And the petitioner was attempting to prove the basis for his cat claim by establishing that he was bisexual, in part by reference to testimony about his past relationships. So it would be logical that the IJ would explore the credibility of that testimony. The IJ did not find that Mr. Chambers himself was not credible, and that's what the BIA said too. Didn't the IJ find that implicitly, at least, by rejecting the claim? No, Your Honor. In other words, the petitioner testified, I am bisexual. The IJ says, I am not persuaded. Isn't that an adverse, at least implicitly, adverse credibility finding? No, Your Honor, and here's why. It's because the IJ applied the wrong legal criteria for assessing whether someone is bisexual or not. The reason why the IJ was not fully persuaded was because Mr. Chambers did not present evidence of past same-sex conduct. In so holding, the IJ applied the wrong legal criteria, and the BIA did the same thing in saying that the evidence is not sufficient. Ordinary sufficiency of the evidence is a legal question. Help me understand what incorrect criteria you think was applied. Well, I rely on this Court's decision, Abel v. United States, and that decision draws a clear demarcation between sexual orientation and conduct. So if the question is what are the criteria, the question for determining whether someone is bisexual, that's a question of an immutable characteristic or a propensity to engage in same-sex conduct but does not require evidence of past same-sex conduct itself. And we rely, again, on Abel v. United States for that proposition. More than that, under the rule— If there is no evidence of past homosexual conduct, then how could there be a likelihood of future torture? Who would know about it if it hasn't happened in the past? Well, there's the statements of the Declaration of Homosexuality itself, or bisexuality in this case, rumors. What do you mean the Declaration? Mr. Chambers has freely admitted that he is bisexual not only in these proceedings but before these proceedings back in 2000 and 2001. He testified that people in Jamaica knew about his sexual orientation. Did he identify any such people? He didn't identify them by name. They were made known to him when people approached his mother when she returned to Jamaica. He also testified, I believe, that he has periodic telephone calls with people in Jamaica, and the country reports for Jamaica indicate that it's a country in which government officials acquiesce or even participate in torture of individuals with a declared bisexual orientation. That's something that the BIA overlooked here. There's a connection between not just conduct but also declared orientation in torture, or even—and this is not our case—but even just the appearance of bisexuality or homosexuality and torture. That's a critical point, and the reason why we're here is to avoid harm to Mr. Chambers, and if there is that connection between declared orientation, even in the absence of conduct, and possible torture in Jamaica, more likely than not, then that's a question of law that this Court should examine. In particular—and this is a point I want to stress— it's important for words like bisexuality to have a shared meaning under the rule of law so that the BIA doesn't fill those terms up with its own arbitrary meaning or a meaning that departs from the meaning that most people attach to that word, and indeed people in Jamaica would attach to that word or some subset of them. In particular— What is the BIA's definition, and why is that wrong?  but it made clear that past same-sex conduct was required in order to establish bisexuality. That, again, departs both from precedent and the common understanding of that word, given that— Unless—if the IJ and the BIA were implicitly—maybe not explicitly, but it implicitly found— made an adverse credibility determination against him, not just the other witnesses, then they could rely on the absence of corroborating evidence in support of that final determination, correct? Once testimony has been called into question, the IJ properly relies on the absence of corroborating evidence in taking testimony that's already doubtful and making an adverse credibility determination. Well, two points there. There's no adverse credibility finding with respect to Mr. Chambers. The BIA said adverse credibility determination as to respondent's witnesses, not as to the respondent himself. I think the BIA is pretty clear there. Even if evidence of past same-sex conduct were required, and we submit that it is not, the IJ totally overlooked Mr. Chambers' testimony that it was unavailable in this case. The IJ did not address that. He, Chambers, testified that. He ended his relationship with Damian Curry back in 2001 and with Mr. Hall after his son Khalil Washington was born. And so if that testimony were not deemed incredible, and it wasn't, he gave reasons on the record why the past same-sex conduct evidence that the IJ wanted was totally unavailable. What about the IJ's alternative finding? I mean, the IJ said even assuming he is bisexual, he hasn't demonstrated a likelihood of future torture? That alternative . . . How do you deal with that? I deal with it by saying that that finding is not before this court, given that the BIA expressly declined to adopt it. And in light of the BIA's determination not to adopt that portion of the IJ's opinion, it's not part of this court's purview for review. So what it should do if it determines that the IJ and the BIA erred with respect to the bisexuality determination is remand for determination. Good morning, Your Honors. May it please the Court. My name is Jennifer Singer, and I represent the United States Attorney General, the respondent in this matter. Petitioner's counsel spent much of the time arguing that the IJ and BIA erred in requiring evidence of past sexual relationships, so I'll just start on that point. First of all, that issue was not raised to the Board, and thus it's not exhausted, and for that reason the Court should decline to consider it now. In any event, Petitioner himself premised his claim on being bisexual, and during testimony claimed that he had multiple homosexual relationships, and those relationships spanned over a period of 10 years. Petitioner himself put that at issue, and the immigration judge was reasonable in developing and asking him questions on those points, and then requiring or asking for the other witnesses to corroborate those claims, and he simply failed to do so. So I don't think there's any error of law in that regard. This is not a case where Petitioner just claimed to have, just be bisexual with no past conduct, and that he was very involved in the LGBTQ community or participated in rallies. His testimony was that he engaged in these past relationships, and that's what the questioning and corroboration focus focused on because of that testimony. So in that regard, the government sees no legal error. The Petitioner also argues that the immigration judge overlooked his testimony regarding the unavailability of corroborating evidence from his past partners. While the immigration judge did not expressly discuss his testimony in that regard, it's equally possible that the IJ didn't because his testimony was inconsistent in that point. Initially, the Petitioner testified that he was on and off with Mike Hall until now, which at the time of proceedings was 2016, and then a couple sentences later testified that he hasn't really spoken to Mike Hall since 2011. So given that, I think the explanation for the unavailability, perhaps the immigration judge wasn't persuaded. Even if there was error for the immigration judge not to expressly discuss that aspect of the Petitioner's testimony, any error was rectified by the Board. The Board didn't focus on the Petitioner's lack of corroboration from past partners. The Board's decision in a whole reflects that it faulted the Petitioner from not providing any credible corroborating evidence from anyone. He presented three witnesses, his mother, his sister, and his sister's boyfriend. The mother was not credible and not reliable. The sister was not credible and not reliable. And the third witness testified that he did not know Petitioner to engage in any homosexual relationships. So there was no . . . and given that those witnesses were available and did testify, there was no need to go into any further explanation on unavailability because the witnesses were available. Was the Board making a determination that there's an adverse credibility finding with regard to him that's adequately supported or that the IJ properly determined that he failed to satisfy his burden of proof? I agree with Petitioner that the way the Board's decision is written is that the adverse credibility finding only extended to the witnesses, and I believe it presumed the Petitioner's credibility but faulted him for not corroborating and therefore not satisfying his burden of proof. And then Petitioner's other argument is that his . . . So he was expected to do what? To bring witnesses in to testify that they'd had intimate relations with him? That's what the immigration judge said. But then the Board faulted him for not providing anyone credible to corroborate his claims. Again, he brought in three witnesses. He presented letters. And in general, these immigration proceedings, it's quite rare to have that many witnesses come in and testify on behalf of an applicant for asylum. And the three witnesses he brought in, two were unreliable and incredible, and the third testified that he did not know Petitioner to have engaged in previous homosexual relationships. Isn't it somewhat . . . This man presumably lives in the Jamaican community. Isn't it somewhat unrealistic to require him to bring in his sex partners given the . . . I think it's undisputed given the high level of homophobia in Jamaica. I mean, the immigration judge did fault him for not bringing in past same-sex partners to corroborate that claim. But he . . . I guess the bottom line is that he did bring in witnesses who he claimed to have personal knowledge of his background, his homosexuality, and his partners, and they could not testify reliably or credibly on any of those aspects. And based upon those three witnesses, he presented . . . that's the case he presented. And they were unreliable and incredible, and he could not satisfy his burden of proof based upon the evidence he put forth before the immigration judge and the board. Petitioner also argues that his due process rights were violated because the immigration judge did not provide him with advance notice of corroboration. But there is no requirement that advance notice be given for corroboration. The general rule is that the notice requirement doesn't apply at all when there's an adverse credibility determination. And that's usually in the circumstances where the applicant himself is found not credible. If that's extended to witnesses, which we argue in our opening brief, then the rule doesn't apply at all. If it didn't extend to cover adverse credibility situations where the witnesses were found not credible, then petitioner still has no merit to his argument because even if credible, there is still no requirement that an applicant be given advanced notice of corroboration. So long as the immigration judge discusses the need for corroboration in his decision, then that's been found to be sufficient to satisfy the notice requirement. How do you prove, suppose, how is a litigant supposed to prove that he or she is bisexual? It depends upon their testimony. Some aliens testify. You come in and say, Mr. IJ, Ms. IJ, my name is so-and-so and I'm bisexual. I've been bisexual. I have this bisexual orientation. I've had it my entire life. Why isn't that proof? I think the line of questioning then would extend to do you participate in LGBTQ meetings, communities? Do you have boyfriends, girlfriends? I'm not political. I don't go to rallies. Have you had past relationships? Do you think you, if you haven't? Yes, I've had past relationships. If you haven't, then is there something that might happen in the future? I've had past relationships. Then if that's found credible, then there might be certain, I mean, those are all hypotheticals and not the facts here. I realize that. Then that might go to the merits and still the burden of proof. Just because someone is credible still doesn't mean that they've met their burden of proof on all aspects of their claim. Obviously. The question is different. The question is, you know, it seems to me it's quite complicated. If someone is willing to admit to sexual orientation and I suppose get partners to testify, but that seems to me to be a rather extravagant requirement. I mean, there are questions of intimacy. There are questions of, profound questions of personal privacy. My only answer to that is I do understand that the sexuality aspect is difficult to prove and sometimes it's just an emotional internal thing. But based upon the facts here, the petitioner claimed that these three witnesses would have personal knowledge of his background and they didn't. And he failed to meet his burden of proof. His mother testified that he told her that he was bisexual when he was 19. Correct. And then her testimony was impeached because in a letter, and when she testified to that effect, she said, he told me when he was 19 it was like being hit by a truck. And there are two pages of testimony on that. In a letter that she had submitted earlier, she said she found out from others. Correct. So the IJ found that testimony to be inconsistent. Correct. And he testified with regard to his 10-year relationship with Mr. Hall? Correct. But couldn't provide details about that, or the IJ found he wasn't providing details about the relationship? That is correct. Is that a proper basis for assessing the credibility of the testimony? Yes. I mean, based upon the statute, 8 U.S.C. 1158, the adverse credibility statute, an immigration judge is permitted to look at, make adverse credibility determinations on a witness and on the applicant himself. And base that on any inconsistencies between, within testimony, with other documentary evidence. And that's what the immigration judge did here. His mother said that when he was 19 he told her that. That's what she said in testimony. That's not what she wrote in her letter. And remind me what she wrote in her letter. She wrote in her letter that she found out that her son was bisexual from other people, that he never told her personally. But she testified that he told her personally. Is it the government's position that a petitioner in this situation must present testimony from partners, same-sex partners? No, it's not. Did the IJ suggest that this was a requirement? I don't believe it was. Just based upon what the petitioner testified to. The IJ commented that this kind of evidence was missing. Correct. I believe it, in the absence of the credibility of the mother and the sister, I think it was reasonable to look to something else to corroborate his claim. And that would be one area which would be reasonable to find corroboration, and he did not present it. Thank you. Thank you, Your Honors. Any time an applicant credibly testifies that he or she has a bisexual orientation and shows that more likely than not he would be tortured because of that orientation, he's met his burden of proof. And I want to be crystal clear here that there's been no adverse credibility finding with respect to this petitioner. I think the government's conceded that, and the BIA makes it pretty clear in his order that it is not affirming an adverse credibility finding. So your position is my statement under oath that I'm bisexual is enough, in and of itself? Yes. And if that were all that the petitioner offered, maybe the IJ would have made an adverse credibility finding with respect to him. But the IJ didn't make that adverse credibility finding. So we are at least within the situation. He didn't explicitly say he wasn't making an adverse credibility finding, did he? He did not say that explicitly. When I look at his opinion, he says, I've examined the testimony of the respondent and that of his three witnesses and finds the credibility of the witnesses is doubtful in this court's assessment. That's ambiguous. It could refer to his testimony and the witnesses or just the witnesses' testimony. And then he goes through all the witnesses' testimony, reaching the petitioner's testimony last. And when he reaches that testimony, he says he testified to this relationship, failed to produce any specific details regarding the length of the relationship, whether they ever recited together. The court must find that it is unpersuaded by the respondent's claim of his sexual orientation. That may not be a specific adverse credibility determination, but I'm having a difficult time reading this and not concluding that the IJ did not believe his testimony. Am I missing something? I think the testimony that you're focusing on has only to do with the same-sex relationships. And so it's clear that the IJ is calling into question whether the relationship with Mikey Hall existed or was homosexual in nature. But as to the rest of the testimony, the IJ made no credibility finding. The government said at the hearing that his testimony appears sincere. That's on page 331 of the administrative record. And the BIA referred only to the witnesses. So we are at least in the situation where the BIA is adopting only a portion of the IJ's findings. Or at a minimum, the BIA, unlike potentially this court, understood the IJ to be making an adverse credibility finding with respect to the witnesses only and not with respect to Mr. Chambers. And so this court would have to make a different credibility determination than did the BIA in order to affirm on the ground that Mr. Chambers was not credible. I think that brings us within the situation that Diallo v. INS contemplated, where you have no explicit adverse credibility finding. You have no explanation for why more corroborating evidence would have been required. And no analysis of whether that evidence was available. And more than that, you have an IJ who totally overlooked the unavailability of that evidence. So for those reasons, Your Honor, we do request that the court vacate the BIA's order and remand. Thank you for your time. Are you CJA or pro bono? Pro bono, Your Honor. The pro bono panel appointed me. Thank you for undertaking this. Thank you for your excellent work. My pleasure to be here. Thank you both. Very well argued. Thank you all.